## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

PAUL D. McKINNIS AND DALRIADA ENTERPRISES LLC, a Georgia corporation,

Plaintiff,

v.

FITNESS TOGETHER FRANCHISE CORPORATION, an Arizona corporation,

Defendant.

---

## COMPLAINT

---

Plaintiffs Paul D. McKinnis and Dalriada Enterprises LLC, by and through their attorneys, for their complaint herein, state as follows:

### NATURE OF THE ACTION

1.      In this action, the Plaintiffs seek declaratory relief, rescission and damages against Fitness Together Franchise Corporation ("FT" or "Fitness Together"), an Arizona corporation that is a franchisor of Fitness Together personal training locations, for (a) FT's improper and bad faith refusal to honor a Right of First Refusal in its Master Franchise Agreement with the Plaintiffs in connection with FT's recent repurchase of the FT Master Franchise territory for the Commonwealth of Virginia, (b) FT's breach of contract and negligence in connection with the FT Master Franchise territory for the District of Columbia, and (c) FT's unlawful and fraudulent sale to the Plaintiffs of the FT Master Franchise territory for the State of Georgia.

2.      The Plaintiffs seek an order requiring FT to honor the terms of the Right of First Refusal and provide the Plaintiffs with the requisite notice as provided therein, as well as the

opportunity to match the purchase price for the FT Master Franchise territory for the Commonwealth of Virginia.

3.      The Plaintiffs further seek damages, attorney fees and costs from FT in connection with FT's acts and omissions in the FT Master Franchise territory for the District of Columbia.

4.      The Plaintiffs further seek rescission of the Master Franchise Agreement for the FT Master Franchise territory for the State of Georgia, along with restitution of McKinnis' total investment in that territory, attorney fees and costs.

## PARTIES

5.      The Plaintiff, Paul D. McKinnis ("McKinnis"), is the Chief Executive Officer of Dalriada Enterprises LLC ("Dalriada"). Mr. McKinnis is a citizen and resident of the State of Georgia.

6.      The Plaintiff, Dalriada, is a Georgia limited liability corporation with a principal place of business at 2347 Little Brooke Lane in Dunwoody, Georgia. Dalriada, which has been an FT Master Franchisee since March 10, 2009, is comprised of two members: Paul D. McKinnis and his son, Matthew McKinnis.

7.      The Defendant, FT, is an Arizona for-profit corporation that is a franchisor of Fitness Together locations. FT has its principal place of business at 9092 South Ridgeline Boulevard, Highlands Ranch, Colorado.

8.      FT is the successor in interest to, and was formerly known as, Fitness For Life Franchise Corporation, Inc. ("Fitness For Life"), an Arizona corporation that had a principal place of business at 399 Perry Street #300, Castle Rock, Colorado.

## VENUE

9.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 in that a substantial part of the events or omissions giving rise to the claims asserted in this Complaint occurred in this judicial district.  Moreover, FT has its principal place of business in this judicial district.  In addition, the Master Franchise Agreements at issue require that the instant dispute be litigated in Denver, Colorado.

## JURISDICTION

10.     The Plaintiff seeks declaratory relief arising from FT's improper refusal to honor the Right of First Refusal, its breach of contract, and its violation of the implied covenant of good faith and fair dealing.

11.     The Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. §1332 in that the parties are citizens of different states and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

## GENERAL ALLEGATIONS

### I.      PERTINENT AGREEMENTS

12.     McKinnis and Fitness For Life entered into a Master Franchise Agreement dated May 10, 2005 ("DC Agreement").  The business involves the sale and service of personal training fitness franchises within the FT Master Franchise territory for the District of Columbia (the "Washington, DC FT Master Franchise Territory").

13.     McKinnis and Fitness For Life also entered into a second Master Franchise Agreement dated May 10, 2005 ("Maryland Agreement").  The business involves the sale and

service of personal training fitness franchises within the FT Master Franchise territory for the State of Maryland.

14.     On or about May 10, 2005 McKinnis and Fitness For Life executed Addenda to both the DC Agreement and Maryland Agreement (collectively, the "2005 Addenda"), true copies of which are attached hereto as <u>Exhibits 1 and 2</u>. Each Addendum contains a Right of First Refusal (the "Right of First Refusal") that provides as follows:

> A right of first refusal for the sale of any Fitness Together Master Franchise State(s) that borders Washington DC or Maryland is granted to Paul McKinnis. If any of these States as defined above are offered for sale Paul McKinnis will have thirty days from the date of notification in writing to have a deposit paid and a total of forty-five days from the date of notification to have the sale finalized. After forty-five days from the date of notification, the State or State(s) can be sold to anyone.

15.     The Commonwealth of Virginia borders both Washington, D.C. and Maryland.

16.     As of October 28, 2008 FT was the successor in interest to Fitness For Life.

17.     On or about October 28, 2008 McKinnis and FT executed Addenda to both the DC Agreement and Maryland Agreement (collectively, the "2008 Addenda").

18.     The DC Agreement, the Maryland Agreement, the 2005 Addenda and the 2008 Addenda each constitutes an enforceable contract to which FT is bound.

19.     On or about March 10, 2009 the parties executed agreements by which Paul D. McKinnis assigned to Dalriada his rights under the DC Agreement, the Maryland Agreement, the 2005 Addenda and the 2008 Addenda.

20.     On or about March 10, 2009 the parties also executed an agreement (the "Georgia Agreement") by which FT sold to Dalriada the FT Master Franchise territory for the State of Georgia (the "Georgia FT Master Franchise Territory").

21.     The DC Agreement, the Maryland Agreement and the Georgia Agreement each constitutes a "franchise" within the meaning of the Federal Trade Commission's Franchise Rule, 16 C.F.R. §436.

## II.    THE VIRGINIA FT MASTER FRANCHISE TERRITORY

22.     As of December 2009 there existed a FT Master Franchise State covering the FT Master Franchise territory for the Commonwealth of Virginia (the "Virginia FT Master Franchise Territory").

23.     The Virginia FT Master Franchise Territory borders both Washington DC and Maryland.

24.     As of December 2009 the rights to the sale and service of FT personal training fitness franchises within the Virginia FT Master Franchise Territory were owned by an individual named Donald Carpenter and/or by a corporate entity under Mr. Carpenter's ownership or control called, upon information and good faith belief, DC Fitness (collectively, "Carpenter").

25.     In December 2009 Carpenter and the Plaintiffs agreed in principle that Carpenter would sell the Virginia FT Master Franchise Territory to the Plaintiffs.   As part of the consideration for the sale, Carpenter accepted employment with FT.

26.     Carpenter informed FT in December 2009 or early January 2010 of his agreement in principle to sell the Virginia FT Master Franchise Territory to the Plaintiffs.

27.     FT insisted that Carpenter not sell the Virginia FT Master Franchise Territory to the Plaintiffs, and instead sell the territory to FT.

28.    FT discussed with Carpenter the Right of First Refusal, and it deliberately took steps with Carpenter to attempt to circumvent and defeat the Plaintiffs' rights under the Right of First Refusal.    In particular, FT threatened to withdraw the employment opportunity offered Carpenter if he did not transfer the Virginia FT Master Franchise Territory.

29.    FT agreed that, if Carpenter sold the Virginia FT Master Franchise Territory to FT, FT would indemnify Carpenter from any liability that might result from a cause of action initiated by the Plaintiffs against Carpenter concerning the Virginia FT Master Franchise Territory and/or the Right of First Refusal.

30.    At FT's direction, Carpenter offered the Virginia FT Master Franchise Territory for sale to FT in early 2010.

31.    By letter dated January 7, 2010 counsel for the Plaintiffs sent a letter to FT demanding that FT honor the terms of the Right of First Refusal regarding Carpenter's offer to sell the Virginia FT Master Franchise Territory to FT (the "Demand Letter").

32.    By letter dated January 19, 2010 FT's Executive Vice President and General Counsel, Amy S. Powers, promised a formal response to the Demand Letter "within the next couple of days."

33.    On January 22, 2010 counsel for the Plaintiffs notified FT that he expected that, while FT was preparing its formal response to the Demand Letter, the proposed sale of the Virginia FT Master Franchise Territory to FT "will continue to be held in abeyance."

34.    On information and belief, in January 2010 Carpenter sold the Virginia FT Master Franchise Territory to FT for consideration (the "Sale").

35.     On information and belief, the Sale occurred after the date that FT received the Demand Letter.

36.     On information and belief, the Sale occurred after FT's receipt of the January 22, 2010 notice from counsel for the Plaintiffs indicating his expectation that the proposed sale of the Virginia FT Master Franchise Territory to FT would continue to be held in abeyance.

37.     On information and belief, the Sale occurred before FT provided the Plaintiffs with a formal response to the Demand Letter.

38.     On information and belief, FT furnished consideration to Carpenter for the Sale.

39.     On information and belief, as consideration for the Sale, FT agreed to pay Carpenter the sum of $250,000, paid monthly over a three-year period, less certain monies to cover the cost of continuing to provide support services to Carpenter's former franchisees in the Virginia FT Master Franchise Territory.

40.     As the Sale involved the sale of the Virginia FT Master Franchise Territory, that transaction triggers the Right of First Refusal under the 2005 Addenda.

41.     FT failed and refused to honor the Right of First Refusal in connection with the Sale.

42.     FT failed and refused to provide notice of the Sale to Dalriada.

43.     FT failed and refused to wait until forty-five (45) days until after providing notice of the Sale to Dalriada before completing the Sale.

44.     FT failed and refused to offer Dalriada the opportunity to purchase the Virginia FT Master Franchise Territory on the terms and conditions agreed to by FT and Carpenter.

45.    Dalriada was ready, willing and able to purchase the Virginia FT Master Franchise Territory pursuant to the Right of First Refusal, and remains ready, willing and able to do so now.

## III.    THE WASHINGTON, DC FT MASTER FRANCHISE TERRITORY

46.    In persuading Mr. McKinnis to invest in the Washington, DC FT Master Franchise Territory, Fitness For Life repeatedly assured Mr. McKinnis that the Washington, DC FT Master Franchise Territory would be able to hold up to 10 franchise locations, each with a one-mile territory (the "Assurances").

47.    At the times that Fitness For Life made the Assurances, unbeknownst to McKinnis, the then current Fitness For Life Uniform Franchise Offering Circular ("UFOC") represented that the "typical" protected territory for franchisees "will include an area of 3 miles driven in any direction from the franchise location ..." (the "3 Mile Territory").

48.    At the times that Fitness For Life made the Assurances, the exemplar Fitness For Life franchise agreement, unbeknownst to McKinnis, contained in the then current Fitness For Life UFOC provided that the franchisee's protected territory "will be 3 miles in any direction from the studio ..."

49.    At the times that FT made the Assurances, they knew or should have known that the then current FT UFOC and the exemplar FT franchise agreement each contained a 3 Mile Territory representation.

50.    At the times that Fitness For Life made the Assurances, they knew or should have known that the Washington, DC FT Master Franchise Territory would not be able to hold up to 10 franchise locations.

51.     In reliance on FT's advise that a one mile territory was appropriate in the District of Columbia, Dalriada executed a franchise agreement with FT, executed a lease for a studio in Washington, D.C. near Scott Circle and did not object to FT entering into separate franchise agreements with Martha Medlin King ("King") and Alita Brown ("Brown") in the District of Columbia both within three miles of Dalriada's selected location.

52.     Unbeknownst to the Plaintiffs, FT agreed that the franchises operated by King and Brown each would have 3 Mile Territories.

53.     On or about July 2, 2009 King commenced litigation against Mr. McKinnis and Matthew McKinnis concerning King's 3 Mile Territory (the "King Litigation").

54.     The King Litigation was a direct, proximate and foreseeable result of the Assurances.

55.     As a direct and proximate result of FT's acts and omissions, the Plaintiffs have been damaged, including but not limited to having to expend funds to defend against the King Litigation.

## IV.     THE GEORGIA FT MASTER FRANCHISE TERRITORY

56.     In early 2009 FT offered the Georgia FT Master Franchise Territory for sale to Mr. McKinnis and/or Dalriada.

57.     On or about March 10, 2009 FT sold the Georgia FT Master Franchise Territory to Dalriada for the sum of $235,000 (the "March 2009 Sale").

58.     FT and Dalriada did not execute a Master Franchise Agreement in connection with the March 2009 Sale.

59.     Instead, FT entitled the Georgia Agreement, which memorializes the terms and conditions of the March 2009 Sale, as an "Addendum to DC Master Franchise Agreement".

60.     In characterizing its sale of the Georgia FT Master Franchise Territory to Dalriada as an expansion or modification of the DC Agreement, FT materially deviated from its established course of conduct concerning the sale of FT Master Franchise territories.

61.     All FT Master Franchise Territories are comprised of an entire state (or, in the case of the District of Columbia, the entire District of Columbia).

62.     With the sole exception of the Georgia FT Master Franchise Territory, FT has executed a separate Master Franchise Agreement for each and every FT Master Franchise Territory.

63.     Prior to its sale of the Georgia FT Master Franchise Territory to Dalriada, FT had never characterized the sale of a FT Master Franchise territory as an expansion or modification of an existing FT Master Franchise Agreement.

64.     The parties executed the Georgia Agreement on or about March 10, 2009.

65.     The Georgia Agreement purports to expand the FT Master Franchise Territory granted in the DC Agreement, and to modify the terms of the DC Agreement.

66.     Certain of the terms and conditions of the Georgia Agreement are materially different from the terms and conditions of the DC Agreement.

67.     Unlike the DC Agreement, the Georgia Agreement contains (i) a specific development schedule of sales and opening goals over a five-year period; (ii) a requirement that the Master Franchisee develop a marketing and advertising plan under which the Master Franchisee will spend at least $18,000 annually to sell franchises; and (iii) a buy-back option

allowing FT, under certain circumstances, to repurchase the Georgia FT Master Franchise Territory for 3.5 times the trailing 12 months net royalties actually received by the Master Franchisee.

68.     In offering the Georgia FT Master Franchise Territory for sale to Mr. McKinnis and/or Dalriada, FT was required by law to furnish Mr. McKinnis and/or Dalriada with mandated presale disclosures, including a franchise disclosure document ("FDD") under the Federal Trade Commission's Franchise Rule, 16 C.F.R. §436.

69.     In offering the Georgia FT Master Franchise Territory for sale to Dalriada, FT failed to furnish Dalriada with mandated presale disclosures, and failed to furnish Dalriada with an FDD.

70.     In offering the Georgia FT Master Franchise Territory for sale to Dalriada, FT and/or its authorized agents misrepresented to the Plaintiffs that it was not necessary for FT to furnish Dalriada with presale disclosures, such as a franchise disclosure document, and that it would be "easier" to reference the March 2009 Sale as an expansion or modification of the DC Agreement.

71.     In offering the Georgia FT Master Franchise Territory for sale to Dalriada, FT knowingly withheld material information from Dalriada.

72.     In offering the Georgia FT Master Franchise Territory for sale to Dalriada, FT knowingly misrepresented to Dalriada the number of open and operating FT franchised locations within the Georgia FT Master Franchise Territory.

73.     Upon information and belief, at the time FT offered the Georgia FT Master Franchise Territory for sale to Dalriada, FT did not have a then-current FDD in existence.

74.     Through its offer of the Georgia FT Master Franchise Territory for sale to Dalriada, FT committed numerous material violations of the franchise disclosure laws, as well as violations of the Georgia Fair Business Practices Act.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment)

75.     The Plaintiffs incorporate by reference all prior allegations.

76.     Pursuant to 28 U.S.C. §§ 2201 and 2202, the Court has jurisdiction to determine disputes between the parties concerning their respective obligations under the Agreement.

77.     A justiciable controversy currently exists between the parties as to whether FT is required, at the option of Dalriada, to honor the terms of the Right of First Refusal.

78.     The Plaintiffs respectfully request that the Court declare:

a.      That FT has defaulted on its obligations to Dalriada under the DC Agreement and Maryland Agreement, specifically with respect to the Right of First Refusal set forth in the 2005 Addenda;

b.      That FT is required to honor the terms of the Right of First Refusal,

c.      That FT is required to provide Dalriada with the requisite notice as provided in the Right of First Refusal, and

d.      That FT is required to provide Dalriada with the opportunity to match the purchase price for the Virginia FT Master Franchise Territory.

## SECOND CAUSE OF ACTION
### (Breach of Contract and Breach of Implied Covenant of
### Good Faith and Fair Dealing – 2005 Addenda)

79.     The Plaintiffs incorporate by reference all prior allegations.

80.     The 2005 Addenda each constitute an enforceable contract to which FT is bound.

81.     FT breached the 2005 Addenda in connection with its repurchase of the Virginia FT Master Franchise Territory.

82.     FT is and was obligated under the 2005 Addenda to provide notice to Dalriada of FT's repurchase of the Virginia FT Master Franchise Territory.

83.     FT breached its obligations under the 2005 Addenda, by failing to provide notice to Dalriada of FT's repurchase of the Virginia FT Master Franchise Territory.

84.     FT is and was obligated under the 2005 Addenda to offer Dalriada the opportunity to purchase the Virginia FT Master Franchise Territory on the terms and conditions agreed to by FT and Carpenter.

85.     FT breached its obligations under the 2005 Addenda, by failing to offer Dalriada the opportunity to purchase the Virginia FT Master Franchise Territory on the terms and conditions agreed to by FT and Carpenter.

86.     FT's breaches of the 2005 Addenda have caused, and will continue to cause, substantial harm to the Plaintiffs.

87.     FT owes Dalriada a duty of good faith and fair dealing in the performance and enforcement of the 2005 Addenda to not use its discretion to frustrate the underlying purpose of the Addenda, namely, that Dalriada would have the opportunity to acquire a master franchise in Virginia prior to FT or any third party.

88.     FT breached its duty of good faith and fair dealing in the performance and enforcement of the 2005 Addenda by frustrating the underlying purpose of the Addenda and the reasonable expectations of Dalriada.

89.     FT's breach of its duty of good faith and fair dealing in the performance and enforcement of the 2005 Addenda has caused, and will continue to cause, substantial harm to the Plaintiffs.

### THIRD CAUSE OF ACTION
**(Breach of Contract and Breach of Implied Covenant of
Good Faith and Fair Dealing – DC Agreement)**

90.     The Plaintiffs incorporate by reference all prior allegations.

91.     At the time that Dalriada and FT executed the DC Agreement, there was a meeting of the minds between Dalriada and FT that the Washington, DC FT Master Franchise Territory was capable of accommodating as many as ten FT franchises, each with a one-mile territory.

92.     The agreed upon purchase price for the Washington, DC FT Master Franchise Territory reflected the mutual understanding between Dalriada and FT that the Washington, DC FT Master Franchise Territory was capable of accommodating as many as ten FT franchises, each with a one-mile territory.

93.     That the Washington, DC FT Master Franchise Territory was capable of accommodating as many as ten FT franchises, each with a one-mile territory, was a material element of the DC Agreement.

94.     In performing under the DC Agreement, FT was obligated to not frustrate Dalriada from enjoying the benefit of its bargain with regard to the DC Agreement.

95.     By effectively limiting the Washington, DC FT Master Franchise Territory to a maximum of five franchise locations, FT breached the implied covenant of good faith and fair dealing by frustrating Dalriada's reasonable expectations under the DC Agreement.

96.     As a direct and proximate result of FT's breach of its obligation not to prevent Dalriada from enjoying the benefit of its bargain with regard to the DC Agreement, the Plaintiffs have been damaged, including but not limited to suffering a material reduction in the amount of

revenue to the Plaintiffs that the Washington, DC FT Master Franchise Territory is capable of producing.

97.     FT owes Dalriada a duty of good faith and fair dealing in the performance of the DC Agreement.

98.     FT breached its duty of good faith and fair dealing in the performance of the DC Agreement

99.     FT's breach of its duty of good faith and fair dealing in the performance of the DC Agreement has caused, and will continue to cause, substantial harm to the Plaintiffs.

## FOURTH CAUSE OF ACTION
### (Negligence Misrepresentation Causing Financial Loss in a Business Transaction)

100.    The Plaintiffs incorporate by reference all prior allegations.

101.    FT gave false information to McKinnis regarding the District of Columbia being able to support ten franchises each with a one-mile territory.

102.    FT gave such false information to McKinnis in the course of FT's business.

103.    FT gave such false information to McKinnis for the guidance and use of McKinnis in a business transaction and, in particular, McKinnis purchase of the master franchise, McKinnis subsequent location of a studio and McKinnis' decision not to object to the sale of franchises by FT to King and Brown for locations within three miles of where McKinnis' was opening his studio.

104.    FT was negligent in obtaining or communicating the false information.

105.    FT gave the false information with the intent or knowing that McKinnis would act in reliance on the false information.

106.    McKinnis relied on the false information supplied by FT.

107.   McKinnis reliance on the false information directly and proximately caused the Plaintiffs to suffer significant harm and damage, including economic loss.

## FIFTH CAUSE OF ACTION
### (Fraud in the Inducement – Georgia Agreement)

108.   The Plaintiffs incorporate by reference all prior allegations.

109.   In offering the Georgia FT Master Franchise Territory for sale to Mr. McKinnis and/or Dalriada, FT knowingly misrepresented to the Plaintiffs that it was not necessary for FT to furnish Mr. McKinnis and/or Dalriada with presale disclosures, such as a franchise disclosure document.

110.   In offering the Georgia FT Master Franchise Territory for sale to Mr. McKinnis and/or Dalriada, FT knowingly withheld material information from the Plaintiffs, information that would have had a material bearing upon Dalriada's investment decision.

111.   At the time that FT offered the Georgia FT Master Franchise Territory for sale to Mr. McKinnis and/or Dalriada, FT did not have a then-current franchise disclosure document in existence.

112.   In offering the Georgia FT Master Franchise Territory for sale to McKinnis and/or Dalriada, FT failed to inform the Plaintiffs that FT did not have a then-current franchise disclosure document in existence, a material fact in that without a disclosure document, neither FT nor the Plaintiffs could sell franchises in Georgia making compliance with any development schedule unattainable.

113.   In deciding to invest in the Georgia FT Master Franchise Territory, Dalriada reasonably relied on the misrepresentations of FT and/or its authorized agents.

114.    As a direct and proximate result of Dalriada's reliance on the misrepresentations of FT and/or its authorized agents, the Plaintiffs have suffered, and continue to suffer, damages.

## SIXTH CAUSE OF ACTION
**(Violation of Georgia Fair Business Practices Act – Georgia Agreement)**

115.    The Plaintiffs incorporate by reference all prior allegations contained in paragraphs 1 through 108 of this Complaint as if expressly restated herein.

116.    FT offered the Georgia FT Master Franchise Territory for sale to Mr. McKinnis and/or Dalriada.

117.    FT's offer of the Georgia FT Master Franchise Territory for sale to Mr. McKinnis and/or Dalriada constitutes an offer of a franchise under the FTC Franchise Rule, 16 C.F.R 436.

118.    FT was required under the FTC Franchise Rule, 16 C.F.R 436, to furnish a franchise disclosure document to Mr. McKinnis and/or Dalriada in connection with offering the Georgia FT Master Franchise Territory for sale to Mr. McKinnis and/or Dalriada.

119.    In offering the Georgia FT Master Franchise Territory for sale to Mr. McKinnis and/or Dalriada, FT failed to furnish a franchise disclosure document to Mr. McKinnis and/or Dalriada.

120.    FT's conduct in failing to furnish a franchise disclosure document to Mr. McKinnis and/or Dalriada in offering the Georgia FT Master Franchise Territory for sale constitutes a *per se* unfair and deceptive act or practice as prohibited by the Georgia Fair Business Practices Act, Ga. Code Ann. §10-1-390, *et seq.*

121.   FT's conduct in offering the Georgia FT Master Franchise Territory for sale to Mr. McKinnis and/or Dalriada constitutes actionable fraud under the Georgia Fair Business Practices Act, Ga. Code Ann. §10-1-390, *et seq.*, in that:

    a    FT knowingly misrepresented to the Plaintiffs that it was not necessary for FT to furnish Mr. McKinnis and/or Dalriada with presale disclosures, such as a franchise disclosure document;

    b.    FT knowingly withheld material information from the Plaintiffs, information that would have had a material bearing upon Dalriada's investment decision;

    c.    FT failed to inform the Plaintiffs that FT did not have a then-current franchise disclosure document in existence; and

    d.    FT knowingly failed to furnish Mr. McKinnis and/or Dalriada with presale disclosures, such as a franchise disclosure document.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that this Court:

1.   Issue its Summons and Order of Notice that FT answer this Complaint.

2.   After trial, award the Plaintiffs their damages, attorney fees, costs and prejudgment interest, pursuant to Counts II and III of the Complaint.

3.   After trial, declare:

    a.    That FT has defaulted on its obligations to Dalriada under the DC Agreement and Maryland Agreement, specifically with respect to the Right of First Refusal set forth in the 2005 Addenda;

    b.    that FT is required, at the option of Dalriada, to honor the terms of the Right of First Refusal,

    c.    that FT is required, at the option of Dalriada, to provide Dalriada with the requisite notice as provided in the Right of First Refusal, and

    d.    that FT is required, at the option of Dalriada, to provide Dalriada with the opportunity to match the purchase price for the Virginia FT Master Franchise Territory.

4.     After trial, grant rescission of the Georgia Agreement and award Dalriada restitution of McKinnis' total investment in the Georgia FT Master Franchise Territory, including all damages, costs and expenses incurred in connection with its investment in the Georgia Agreement and reasonable attorney's fees incurred by Dalriada in this legal action.

5.     After trial, grant the Plaintiffs all out-of-pocket damages, costs and expenses incurred in defending against the King Litigation.

6.     After trial, award to Dalriada, pursuant to Section 20.3 of the DC Agreement and Maryland Agreement, all amounts due and all damages, costs and expenses, including reasonable attorney's fees, incurred by Dalriada in this legal action as a result of FT's defaults under the DC Agreement, the Maryland Agreement, the 2005 Addenda and the Georgia Agreements, plus interest at the lesser of 2% per month or the highest rate allowable by law, accruing from the date of such defaults.

7.     Award to the Plaintiffs such further and other relief as the Court deems just and proper.

DATED this 20th day of September, 2010.

Respectfully submitted,

ROBINSON WATERS & O'DORISIO, P.C.

/s/ Harold R. Bruno, III (original signature on file)
Harold R. Bruno, III
1099 18th Street, Suite 2600
Denver, Colorado 80202
Telephone: (303) 297-2600
Facsimile: (303) 297-2750
E-mail: hbruno@rwolaw.com

and

Eric H. Karp, Esq.
David J. Meretta, Esq.
Witmer, Karp, Warner & Ryan LLP
22 Batterymarch Street
Boston, Massachusetts 02109
Telephone: (617) 423-7250
Facsimile: (617) 423-7251
E-mail: ekarp@wkwrlaw.com and
        dmeretta@wkwrlaw.com

*Counsel for Plaintiff*

306467