IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 10-cv-02308-RPM

PAUL D. MCKINNIS and
DALRIADA ENTERPRISES LLC,
a Georgia corporation,

       Plaintiffs

v.

FITNESS TOGETHER FRANCHISE CORPORATION,
an Arizona corporation,

       Defendant.

## ORDER ON DEFENDANT'S MOTION

       The plaintiffs filed this action on September 20, 2010, alleging six claims for relief. On October 12, 2010, the defendant moved for dismissal of the complaint pursuant to Fed.R.Civ.P.12(b)(6), and, in the alternative, for summary judgment of dismissal of claims three through six. (Dkt. #4.) On November 5, 2010, the plaintiffs filed a brief opposing the defendant's motion(s). (Dkt #9.) On that same date, the plaintiffs moved pursuant to Fed.R.Civ.P. 41(a)(2) for dismissal without prejudice of claims three, four and six (designated "Counts III, IV and VI"). (Dkt. #10.) Because no answer has been filed the motion is deemed an amendment to the complaint and is within the plaintiffs' right to amend under Fed.R.Civ.P. 15(a)(1).

The following statement of facts is drawn from the allegations of the complaint and documents referenced in the complaint, which are attached as exhibits 1 through five to the declaration of Kevin Betts.  Betts is the defendant's Chief Operating Officer, and his declaration is Exhibit A to the defendant's motion to dismiss, or in the alternative for summary judgment.  These facts are not in dispute.

Defendant Fitness Together Franchise Corporation ("FT" or "the defendant") is an Arizona corporation with its principal place of business in Highlands Ranch, Colorado.  The defendant is the franchisor of Fitness Together personal training fitness studios.  The defendant is the successor franchisor to agreements entered into by another company, Fitness For Life.  (Compl. ¶¶ 1, 7 & 8.)

Plaintiff Dalriada Enterprises LLC ("Dalriada") is a Georgia limited liability corporation with its principal place of business in Dunwoody, Georgia.  Dalriada has two members – Paul McKinnis and his son, Matthew McKinnis.  (Compl. ¶ 6.)

On May 10, 2005, Paul McKinnis ("McKinnis") and Fitness For Life entered into two Master Franchise Agreements.  (Compl. ¶¶ 12 & 13.)  One was a Master Franchise Agreement for the territory of Washington, D.C.  (Ex. 1 to Betts Decl., "the DC Agreement.")  The second was a Master Franchise Agreement for the territory of the State of Maryland ("the Maryland Agreement").  Pursuant to those agreements, McKinnis became the Master Franchisee with authority to sell franchises for Fitness Together personal training studios within those geographic areas and to provide services to such studios.

The DC and Maryland Agreements were modified by addenda dated May 10, 2005. (Exs. 1 & 2 to the Compl., collectively, the "2005 Addenda.") Each Addendum contained the following provision:

> A right of first refusal for the sale of any Fitness Together Master Franchise State(s) that borders Washington DC or Maryland is granted to Paul McKinnis. If any of these States as defined above are offered for sale, Paul McKinnis will have thirty days from the date of notification in writing to have a deposit paid and a total of forty-five days from the date of notification to have theسale finalized. After forty-five days from the date of notification the State or State(s) can be sold to anyone.

(Compl. ¶ 14.) For ease of reference, this provision is referred to herein as the right of first refusal or "ROFR."

On October 28, 2008, the defendant became the successor to Fitness for Life. That change was recognized in Addenda to the DC and Maryland Agreements dated October 28, 2008 ("the 2008 Addenda"). (Compl. ¶¶ 16-17; Ex. 3 to Betts Decl.)

On March 10, 2009, McKinnis assigned to Dalriada his rights under the DC Agreement, the Maryland Agreement, the 2005 Addenda and the 2008 Addenda, with the defendant's written consent. (Compl. ¶ 19; Ex. 4 to Betts Decl.)

On March 10, 2009, the defendant sold the Georgia FT Master Franchise Territory to Dalriada for the sum of $235,000. (Compl. ¶¶ 20, 57.) The terms and conditions of that purchase and sale transaction were documented as an addendum to the DC Agreement. (Compl. ¶ 59; Ex. 5 to Betts Decl., the "2009 Addendum to the DC Agreement.")

In 2009, the FT Master Franchise rights for the State of Virginia were owned by Donald Carpenter or a corporate entity under his control ("Carpenter"). (Compl. ¶ 24.) In December

2009, Carpenter and the plaintiffs agreed in principle that Carpenter would sell the Virginia FT Master Franchise to the plaintiffs. (*Id.* ¶25.)

In late December 2009 or early January 2010, Carpenter informed the defendant of his negotiations with the plaintiffs. In January 2010, the defendant purchased the Virginia FT Master Franchise Territory from Carpenter. (*Id.* ¶¶ 26, 34.)

The plaintiffs demanded that the defendant offer Dalriada the opportunity to purchase the Virginia FT Master Franchise Territory on the same terms and conditions agreed to by the defendant and Carpenter. The defendant refused the plaintiffs' demand. (*Id.* ¶¶ 31, 41-44.)

On September 20, 2010, McKinnis and Dalriada filed this action against FT, seeking declaratory relief and damages for breach of the ROFR and breach of implied duties of good faith and fair dealing in the 2005 Addenda to the DC and Maryland Agreements (the first and second claims for relief). The plaintiffs seek rescission of the 2009 Addendum to the DC Agreement, alleging fraud in the inducement (the fifth claim for relief).

Jurisdiction is provided by 28 U.S.C. § 1332 because there is complete diversity of citizenship between the plaintiffs and the defendant. The substantive law of Colorado governs the dispute in the first and second claims based on the choice of law provision in the DC Agreement.

In the first claim for relief, the plaintiffs allege that the defendant breached the 2005 Addenda and violated the ROFR by acquiring the Virginia FT Master Territory without providing notice and opportunity for the plaintiffs to purchase the Virginia FT Master Territory on the same terms and conditions agreed to by the defendant and Carpenter. (Compl. ¶¶ 75-78.) In the second claim for relief, the plaintiffs allege that the defendant's acquisition of the Virginia

FT Master Franchise Territory violated implied duties of good faith and fair dealing contained in the 2005 Addenda.  (Compl. ¶¶ 79-89.)

The defendant moved for dismissal of these claims under Fed.R.Civ.P. 12(b)(6) based on the plain language of the 2005 Addenda to the DC and Maryland Agreements.

The plaintiffs assert that the plaintiffs' right of first refusal was intended to be triggered whenever the Virginia FT Master Franchise became available for purchase and submitted a declaration of Paul McKinnis.  (Ex. 1 to pls.' opp'n br.)  McKinnis states that when he negotiated and signed the 2005 Addenda, he was aware of the existence of a FT Master Franchise covering the entire State of Virginia.  (McKinnis decl. ¶ 9.)  McKinnis says he told the defendant that he was interested in purchasing that Master Franchise, and the defendant indicated the Virginia territory was taken at that time.  (*Id.* ¶11.)  McKinnis states, "Creating a right for us to purchase Carpenter's Virginia FT Master Franchise Territory when and if Carpenter made it available for sale was the purpose behind securing the Right of First Refusal with FT."  (*Id.* ¶ 10.)
 McKinnis states:

> It was and is my understanding, both as of the time that we negotiated and executed the Right of First Refusal with FT and today, that in the [Virginia Territory] FT Master Franchise Agreement, FT had its own right of first refusal with Carpenter concerning the sale of the Virginia FT Master Franchise Territory, and that FT therefore had the ability to ensure that I would be in a position to exercise my Right of First Refusal if and when Carpenter made the Virginia FT Master Franchise Territory available for sale.  My understanding is based on the fact that in the DC and Maryland FT Master Franchise Agreements, Article 15.7 provides FT with a right of first refusal.

(McKinnis decl. ¶13.)

This declaration is irrelevant to the defendant's motion.  The issue presented is one of contract interpretation, which is a matter of law.  *State Farm Mut. Auto. Ins. v. Stein*, 940 P.2d

384, 387 (1997). A contract must be enforced as written unless there is an ambiguity in the language. *Stein*, 940 P.2d at 387; *Allen v. Pacheco*, 71 P.3d 375, 378 (Colo. 2003). There is no ambiguity. A right of first refusal provides the grantee with a contingent option to purchase an asset owned by the grantor if the grantor elects to sell. *See Kroehnke v. Zimmerman*, 171 Colo. 365, 368, 467 P.2d 265, 266 (Colo. 1970) ("The privilege of first refusal merely requires the owner, when and if he desires to sell the property, to offer it to the [grantee], for the same price for which he is 'willing to sell to another.'"); *Stuart v. D'Ascenz*, 22 P.3d 540, 541-42 (Colo. App. 2000) ("a right of first refusal . . . requires the owner, when and if he or she decides to sell, to offer the property first to the holder"). The first claim for relief is dismissed.

Because the language of the ROFR does not support the plaintiffs' interpretation, the plaintiffs' second claim – for breach of contractual duties of good faith and fair dealing – also fails. The Colorado Court of Appeals has explained:

> Good faith performance of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party. . . . However, the duty of good faith and fair dealing does not obligate a party to accept a material change in the terms of the contract or to assume obligations that vary or contradict the contract's express provisions. Nor does the duty of good faith and fair dealing inject substantive terms into the parties' contract. Rather, it requires only that the parties perform in good faith the obligations imposed by their agreement.

*Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.*, 872 P.2d 1359, 1362 (Colo. App. 1994)(citations omitted). In short, an implied covenant cannot be used to rewrite, contradict, or add to the express terms of the contract. *See Monroe Prop., LLC v. Bachelor Gulch Resort, LLC*,

374 F.Supp.2d 914, 922 (D. Colo. 2005) (citing *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995)).[1]

"The duty of good faith and fair dealing applies when one party has discretionary authority to determine certain terms of the contract, such as quantity, price, or time. . . . The duty may be relied upon only when the manner of performance under a specific contract term allows for discretion on the part of either party." *Amoco Oil*, 908 P.2d at 498 (citations omitted). Discretion in performance occurs when "the parties, at formation [of the contract], defer a decision regarding performance terms of the contract leaving one party with the power to set or control the terms of performance after formation." *City of Golden v. Parker*, 138 P.3d 285, 292 (Colo.2006) (quotation omitted). The plaintiffs have not identified any specific contract term that allows for discretion on the part of the defendant. Dismissal is appropriate for that reason. *See Builder MT LLC v. Zybertech Constr. Software Servs., Ltd.*, No. 08-cv-00435-LTB, 2008 WL 4724146, at *3 (D. Colo. 2008) (claim for breach of implied covenant of good faith and fair dealing dismissed because the plaintiff failed to allege a specific contract term allowing for discretion on the part of either party); *Rocky Mountain Chocolate Factory, Inc. v. SDMS, Inc.*, No. 06-cv-01212-PAB-BNB, 2007 WL 4268962, at *6 (D. Colo. Nov. 30, 2007)(summary judgment granted on counterclaim for breach of implied covenant of good faith and fair dealing on the ground that the counterclaimant "did not allege that [the counterclaim defendant] breached any specific contract term that allowed for discretion").

---

[1] That principle is expressed in Section 19.3 of the DC Agreement, which provides, "No implied covenant of good faith and fair dealing shall be used to alter the express terms of this Agreement."

In the fifth claim, the plaintiffs assert that the defendant made material misrepresentations and failed to disclose material information when it sold the Georgia FT Master Franchise to Dalriada in March, 2009 and in requiring that the sale be documented as an Addendum to the DC Agreement.  The plaintiffs refer to the 2009 Addendum to the DC Agreement as "the Georgia Agreement."

Franchise rules promulgated by the Federal Trade Commission Franchise Rule require franchisors to provide presale disclosures to prospective franchisees in the form of a Franchise Disclosure Document ("FDD").  *See* 16 C.F.R. § 436.1 to 436.11.  The defendant did not furnish Dalriada with a current FDD in March 2009.  (Compl. ¶¶ 68, 69; McKinnis decl. 51.)  The plaintiffs contend that the defendant documented the Georgia transaction as a modification of the existing DC Agreement for the purpose of avoiding franchise disclosure laws.  The plaintiffs allege that the defendant committed fraud in connection with the sale of the Georgia FT Master Franchise Territory by:

- misrepresenting that it was not necessary to furnish a written franchise disclosure document and that it would be "easier" to reference the Georgia sale as a modification of the DC Agreement (compl. ¶¶ 70, 109; McKinnis decl. ¶ 52);

- withholding information material to Dalriada's investment decision (compl. ¶¶ 71, 110; McKinnis decl. ¶ 53-54 );

- misrepresenting the number of open and operating FT franchised locations within the Georgia FT Master Franchise Territory (compl. ¶¶ 72, 111; McKinnis decl. ¶ 55), and

- failing to inform the plaintiffs that the defendant did not have a current franchise disclosure document (compl. ¶¶ 73 & 112; McKinnis decl. ¶56).

The defendant contends that this fraud claim is barred by a one-year limitations period provided in the DC Agreement. Article 19.3 of the DC Agreement provides as follows, in pertinent part:

> 19.3 Limitation of Claims.     Master Franchisee and the Bound Parties agree not to bring any claim asserting that any of the Marks are generic or otherwise invalid. *Any claims between the parties must be commenced within one year from the occurrence of the facts giving rise to such claim, or such claim shall be barred. The parties understand that such time limit may be shorter than otherwise allowed by law.* Master Franchisee and the Bound Parties agree that their sole recourse for claims arising between the parties shall be against Franchisor or its successors and assigns. Master Franchisee and the Bound Parties agree that . . . the Franchisor and its affiliates (other than Master Franchisee) shall not be personally liable or named as a party in any action between the Franchisor and Master Franchisee or any Bound Parties. The parties further agree that, in connection with any such proceeding, each must submit or file any claim which would constitute a compulsory counterclaim . . . within the same proceeding as the claim to which it relates . . . The parties agree that any proceeding will be conducted on an individual, not a class-wide, basis, and that a proceeding between Franchisor and Master Franchisee or the Bound Parties may not be consolidated with any other proceeding between Franchisor and any other person or entity. No party will he entitled to an award of punitive or exemplary damages . . . .

(DC Agreement § 19.3, emphasis added)  The defendant points out that the plaintiffs complain of conduct that occurred before March 10, 2009, the date the Addendum was signed. The complaint was filed over eighteen months later, on September 20, 2010.

This limitation is not included in the 2009 Addendum to the DC Agreement (2009 Addendum, para. 7, p. 3.)  The essence of the plaintiffs' fifth claim is that they were fraudulently induced to purchase the Georgia master franchise by making it an addendum to the DC Agreement.  If they succeed on that claim, the agreement may be rescinded making the limitation in the DC Agreement inapplicable to the purchase of the Georgia franchise.

The defendant moves for dismissal of the fraud claim on the additional ground that the allegations are not sufficient to meet the pleading requirements of Rule 9(b), pointing out that the

complaint does not identify who specifically made the alleged misstatements and does not identify when, where or how the alleged misstatements were made.

McKinnis's declaration provides more details about the alleged misrepresentations. McKinnis identifies Fred Driebholz (FT's CFO) and Jeff Jervick (FT's CEO) as persons who misrepresented the necessity of a franchise disclosure document. (McKinnis decl. ¶52.) The McKinnis declaration also states that FT misrepresented the number of franchises operating in Georgia at the time of the sale by concealing that a FT franchise located in Roswell, Georgia had closed and a franchise located in Canton, Georgia was about to close. While that declaration does not constitute and amendment to the complaint made by counsel, it is accepted as an indication that the plaintiffs have a factual basis for the allegations of fraud.

Upon the foregoing, it is

ORDERED, that the first, second, third, fourth and sixth claims for relief are dismissed and it is

FURTHER ORDERED, that the defendant's motion to dismiss and for summary judgment on the fifth claim is denied. This action will proceed on that claim and the defendant will answer it on or before December 28, 2010.

Dated:  December 6, 2010

BY THE COURT:

s/Richard P. Matsch
_____
Richard P. Matsch, Senior District Judge